516-0227. And Mr. Blood, are you going to argue today? Okay. When you're ready, sir. Thank you, Your Honor. May it please the Court. Good morning. For the audio record, my name is Curtis Blood. I represent David Jones and Helen. This case is out of Madison County, and we're appealing from the judgment for contempt, which included an order to pay $36,000 to David's ex-wife, Anne. It's for failure to pay the mortgage on another resident's, failure to sell some field equipment, tractors, boxes, things like that, child support, which we don't contest, child support funds, and a contribution of attorney's fees. Wait, the child support, you're not contesting that that was owed? Correct. The judge found each side entitled to some money on that, found it was a washout, and we're good with that. But that was imposed as part of this indirect civil contempt, wasn't it? Well, it wasn't. Okay. So you're not going to What was it imposed for someone? There was a motion for support. There were four motions in the law that were up for review, Okay. I guess we'll get to those in the obligation. Go ahead. Happy to answer any questions. I know you are. Go ahead. My argument is in three parts. First, that this judgment is an error, and that this court should reverse and remand. And second, and probably equally important, maybe the first question is, remand for what, if there's any need to remand for what? And third, I'd like to get to the attorney fee contribution. Okay. And on that first issue, that the judgment is in error. A court may imprison a fine for contempt, but the fine, if there is a fine, goes to the common treasury. The court is without authority to compensate an aggrieved party for his damages in the contempt proceeding. That's just black-letter law. This court said it in the Harper case that's in our brief. Our Supreme Court said it in Rothschild, which is a very old case, over 100 years old. And it's been the law of Illinois. And it's the law, at least in the brief, but argues that the order of appeals that we're here on was not a contempt judgment. Rather, it was a ruling on her May 2010 motion to amend the judgment of dissolution. All right. Well, and we can see that that was a timely post-trial motion, and it was not ruled on. It has not been ruled on to this day. You can see that point? Yes. You can see that her motion to modify has not been ruled on? To this day. Yes. Okay. So the order that was entered that said all pending matters came before the court. There's two of those. Uh-huh. In 2014. Or, I'm sorry, in 2013. And there was another one. Those did not include the motion to modify. It said all matters came before the court, so that's what I'm trying to find out. What is your position on that? Well, I meant to bring that up. Okay. I'll be patient. Maybe I should have said it hasn't been expressly ruled on. But there were, at pages C318 and C338, there are rulings that purport to be on all pending matters. And it's important to note that this case had a metamorphosis. It started out as a custody and visitation case, and money was a poor second fiddle. There was no money in this marriage. It was just debts. And the judgment of dissolution in 2010 is 28 pages, and 14 of those pages are custody and visitation. Money was a poor second. And it wasn't until the kids finally were able to drive and decide custody based on where they wanted to spend the night that this case moved to money. I wrote in my reply brief that Judge Manierelli in 2016 did not know about that motion to amend the judgment. That is not true. Or I should say it's overstated. I noticed when I read the record this weekend that that motion was Exhibit 6, and it's Exhibit 6 to Judge Manierelli in support of her motion for contempt. Oddly enough, Judge Manierelli wasn't asked to rule on a motion to amend. It was just an exhibit, and I have to question whether he actually read it. It's just as odd as why didn't Judge Levy rule on that motion, or why didn't Judge Levy, I should say, rule on the fact that the mortgage had been foreclosed? Why did Judge Manierelli not notice that that motion was filed while Judge Levy still had the case before the judgment dissolution became final on post-trial motions and yet didn't do anything about it? It's a couple of mysteries and mistakes, and I don't know what to do. I mean, I don't know what to say about that. I don't know what either judge is thinking. I think it's pretty clear what this court should do. Anyway, like I said, the motion to amend was an exhibit for the 2016 hearing, but it's fair to say that Judge Manierelli didn't rule on it. First, but nobody asked him to, and if you look at the position statements filed just before that hearing, Ann's position statement lists the four pleadings that are in dispute for that hearing, and the only one of hers that's listed is the contempt. Judge Manierelli didn't say he ruled on it, and like I said before, he even got in a case that was in two orders that purported to address authentic matters. The other part is, this motion to amend, timely post-trial motion, filed in 2010. 2010! And here it is, 2017. At what point does a motion become abandoned? And if it's not, think about it. This judgment of dissolution, this 2010 judgment of dissolution, custody, if the kids are now out of the house, and dividing up all the money. It is not final! It's not final. This judgment is still up in the air. It's abandoned. The motion's got to be abandoned. Otherwise, what do we do now? If that motion still hasn't been decided, do we go back now and maybe in 2018 get a ruling on that? Well, if the judgment's not final, do you belong here? Except for the contempt. Well, right, that's all right. Scalding breeze in your ear. That's right. Well, my point, Your Honor, is it's abandoned. It's got to be abandoned. I didn't see that argument in your brief. No, it occurred to me this weekend. Okay. But this Court's powers are far beyond mine. I mean, this Court can say abandon any time this Court wants to. Therefore, I point it out. And it's only one of three alternative arguments I'm making to the point that Judge Mangarelli didn't rule on this motion. So, in conclusion, on that point, the judgment, if appealed, is an improper judgment for contempt with damages. And this Court should reverse. So then the question becomes, reverse and remand? Remand for what? If there's no contempt, there's no reason to remand. The first issue on which David was found in contempt was for failing to make the mortgage payment on the house. And yet we know that Ann's attorney, who is not her attorney now, told Judge Levy on the record in open court about the foreclosure of the mortgage at the post-trial motion hearing. In other words, this case was still entirely before Judge Levy. She had the power to amend the judgment, to tear it up and start over. She could do whatever she wanted on a timely post-trial motion. She knew about the foreclosure and did nothing about it. Why didn't she? I do not know. Did she hear it was going on in court? I can't say that. She didn't give any sign of it. But what's more important here, and I finally came to realize this, is not that Judge Levy heard it. I mean, she was there. It's not that she heard it. It's on the record. But that Ann's counsel knew. There were three timely post-trial motions in this case. All three mentioned that the foreclosure had occurred. Her counsel mentioned in open court that the foreclosure had occurred. So there's no question that Ann knew, through her counsel, knew that the mortgage was foreclosed. What happens then is she points it out in open court. She points it out in open court, and yet Judge Levy seems to overlook it. What do you do with that? What do you do? Well, there's two things. Number one, if you're not getting a ruling on the facts that you present, you say, excuse me, Your Honor, what about this? Judge Levy, in open court, did amend, orally amend the judgment, but didn't touch on the fact of the foreclosure. Isn't it, at that point, counsel's duty, or really the party's duty, to say, wait a minute, now you know about the foreclosure. Now what? I mean, the 60-40 split that you got in the equity, now what? We've got a foreclosure. You know about it. We know about it. We just told you. Get a ruling. Or, if you still don't get a ruling, what do you do? You go to Mount Vernon, and yet nobody appealed this judgment. In writing, in open court, on the record, this mortgage was foreclosed. Not reflected in the judgment. Nobody appealed. It became final and unappealable in 2000. How can my client be in contempt of court for failing to pay mortgage payments is required in a judgment when the mortgage had already been foreclosed. And what did your client file to excuse his compliance? Not referring to the fact that he didn't have an exhibit. No. What pleading, once the foreclosure had occurred, the judgment is now out. It's obviously a judgment that she, at least according to some arguments, didn't know about the foreclosure. What did your client file to excuse performance of the order to pay the mortgage? I mean, he could have filed something that would have said it's an impossibility, for example. He could have. And did he? He testified, and by the way, my briefer states this. First page of statement, in fact. He testified under the rule that he lost his job between the first and second days of the trial. And my briefer says he lost it before the first day. That's not true. Either way, he was unemployed. Unemployed. He was unemployed. Except for the horse theft. Did she testify? She testified. Yes. And she was, she was essentially on it. Okay, but my question is, once the order came out, because there was a delay, what did your client file? If anything, to say I'm unemployed, I can't make the mortgage payments that she said, and oh, by the way, the house is in foreclosure. Well, I wouldn't say it was anywhere near that deep. He testified that he was without a job. No, he has to file a pleading once the judgment comes out. Right? Well, the judgment did come out. I'm saying once the 28-page judgment came out, once that happened, and he sees, oh, boy, I've got to do this, and I don't have any money, I'm unemployed. Plus it's been foreclosed. And it's been foreclosed, and it's obvious to you, at least, in your argument that the judge didn't know about it. So my question is, what did your client file to excuse performance? A motion to re-consider. Okay. Timely. Sorry? It was a timely post-trial motion to reconsider. Okay. And in that post-trial motion, he alleged the foreclosure. He alleged the foreclosure. As well as his inability to pay. I don't know that he alleged the inability to pay. I mean, he might have. Sorry that I can't remember that. But clearly that was within 30 days after. Yes. And that was never heard either? That was heard. That was heard? That was heard. Do you remember what date that was heard? Is that in your appendix? It is. Okay. Actually, I can come up with that real quick. I'm sorry? I can come up with that. Oh, no, I've got it. Thank you so much. Very well. I mean, I know what it is. I'll move on. That's okay. I don't want to delay you for that. Well, my point is that this court shouldn't demand proceedings on that. Proceedings for contempt. I mean, the question shouldn't be what should the circuit court do with regard to contempt on the house. There was just no way to do that. It wasn't. And it wasn't on the record. Do you have anything further to spot? No. You don't have time to rebut. I do, and I'm thinking as I look down that my brief covers everything I haven't discussed. I have one question. Okay. Your client was also found in contempt for failing to sell the equipment. Is that correct? Yes. And was he in sole possession of that equipment the entire time that he was ordered to have sold it? Let me take that back, because I don't think the order says he is supposed to sell it. I think the order says the parties are supposed to sell. Shall be sold. Yeah. And was he in possession of the equipment that was to be sold? Some. Did any of it get sold? I beg your pardon? Did any of it get sold? Yes. Did he sell it, or did the wife sell it? He sold some, and she sold some. Okay. She sold some that was in his possession? No, she didn't sell anything that was in his possession. Okay. They had a neighbor in the house named Joe Oros, and he testified. And some of the big items were just dragged over to his house. He sat there and still sits there to this day. Okay. And as to those, Ann's story goes, well, I can't sell that. I don't know how this stuff runs. Well, I don't think it runs at all. And, of course, she can hire a lawyer to come to court. Without knowing the law, she can hire someone if she needs help selling equipment to the land. I don't know that that's an excuse. But the point is, really, the stuff at Joe's house, who's in contention of selling it to that land? Well, if he's got possession of it, why doesn't he sell it? I mean, she sold what she had possession of, and he wanted 50% of it, right? Well, right. It's like fighting over the weed eater. Who's got it? I don't know. So if he's got it, why isn't he selling it? The record doesn't show. There's only two items. I know. I mean, it's like nine items, and that's two items. The argument, well, she could have sold it, but it's at my house. Oh, no. I agree with that, and the judge pretty much bought that. I don't think we ever come back to that. Okay. I mean, as to those ones, as to the ones that he's got. Possession of. That this court should remand for the trial court to decide what to do about the fact that he's in contention of the court. Okay. But it's not damages. But only those items. Not the ones that are at Joe's house. Not the ones that have already been sold. Really, the contempt there, and it's by both parties, is failing to pay the other part. Like I said, I know I'm way over time. Yeah, you're over time, and you'll have a little time for rebuttal, but we'll extend some additional time to Mr. Steiger. Thank you so much. You're welcome. We'll give you some additional time. I'll try to speed. Justice Case, Justice Chapman, Justice Barberis, welcome to your new position. Thank you. This, unfortunately, is one of those cases that we run into in domestic relations litigation not infrequently. And that is, if she's going to get any of the house, I'm going to burn it to the ground. In this case, he didn't burn it to the ground. He let the mortgage get foreclosed. If you go through the record, I'm going to do Mr. Blood's three points that he raised. The first one is this issue of compensatory damages on a contaminant can't be granted. But the factual basis is this. This case is pending before Judge Levy. She enters a temporary order. The people are living together with their two children in the house. She enters a temporary order. He's got a job working as a tool and diet maker making $75,000-plus. My lady's a stay-at-home mom, has a job as a monitor at Roxanna Schools making next to nothing. So there's a temporary order that he's to pay all the bills, pay the mortgages, and so forth. They also had a rental duplex. He was collecting rents on that that were more than the rental payment or the mortgage payment on the duplex. As we go forward from February, he keeps his job until June when he's laid off. He admits, and this is all in the record, as of April, he stops paying everything. My lady doesn't know about it. He gets served with the foreclosure. He doesn't tell anybody about it. We'll come to what Judge Levy knew in a second. But fundamentally, what he does is he decides if she's going to get part of it, it's all going to go. So after the temporary order, he pays for a while, and then he stops paying. And the issue of what is before the court, Ann had a motion to modify the judgment. So if we get the sequence of this down, they have the trial. Post-trial motions are filed. Post-trial motions are argued. And at the argument of the post-trial motion, Ann's attorney at that time, Dave Fahrenkamp, mentions on the record that there's a foreclosure. And Ann's attorney, very shortly thereafter, her new attorney who was Morgan Scroggins, filed a motion to modify the judgment. If we look at the third point that Mr. Blood has as to what Judge Levy knew and the fact that Mr. Jones filed a post-trial motion, Mr. Jones' own attorney on the post-trial motion was arguing it shouldn't have been 60-40. Well, if the house is already gone, arguing 60-40 or 50-50 is pointless. So it's clear that he had not told anyone. If you read the record, after Mr. Fahrenkamp makes the comment to Judge Levy, Judge Levy goes right back to talking about, well, I think the 60-40 ought to be 60-40 of this if I was misunderstood and so forth. Clearly, it went right over her head. Nobody knew that the house was foreclosed at the time of the post-trial motion. Was it actually for Salem's group, 325-2010? Yeah. It had actually already been sold. So why didn't counsel correct? He got – Mr. Jones got – Why didn't counsel correct the court? I don't know. Mr. Jones got served with it after the first day of trial, and then they got three more days of trial. I understand, but the actual sale was approved by a court on March 25, 2010. So by the time they're doing the post-trial argument, it's gone. Yeah. But the point is – The proceeds were, at least according to the briefs, identified as $162,315.18. So there was clear knowledge of the proceeds of the foreclosure. And the problem with that is they all testified the house was worth 250. So this was not an upside-down house that I kind of – who cares? This was Mr. Jones saying Ann's not going to get any of this money. If I can't get all of it, she's not going to get any of it. But his lawyer at the time of the post-trial motion didn't know about the foreclosure. He had not told anybody about it. He accepted service on both summons for himself and for Ann. Ann didn't know anything about it. Dave Ferencamp picked it up out of the argument at the time, mentioned it to Judge Levy, and mentioned – I think Morgan had already filed his motion by that time. So I think if you look at the transcript, what Mr. Ferencamp says is, well, there's a motion to modify the judgment, but we'll take that up at a later date. And this argument that somehow that's waived is nonsense. I mean, it was the time we filed the post-trial motion. And I gave you a case, the O'Malley case from Chicago from last fall. It's a very similar case. In O'Malley, a husband was in the house. And it's a Chicago case, so of course we're talking billions of dollars. But he's in this big house, and the order is he's supposed to sell it and split it 60-40. Well, he doesn't want to sell it, so they get a good offer. He doesn't sell it. They lose the offer. Wife comes in and asks for relief. And the court in that case granted the same relief that Ann was granted in this case, and that is there was a motion to modify the judgment. And this was brought to Judge Mangarelli's attention. This was something Ann testified to. We mark it as an exhibit. And in the record at 750, Ann testifies to Judge Mangarelli saying, here are the things that I have filed, and here's the relief I'm asking for. And if you read his, he ruled for the bench. He felt strongly enough about it. And when he rules for the bench, he says, you know, my understanding is that Judge Levy was trying to give you a portion of the equity, and I find it to be this, and this is what I'm going to award, which meant he was modifying the property award that Judge Levy had made, which he was authorized to do under the motion to modify the judgment. But does he ever say that in the record? I haven't. He ruled for the bench, so we have the oral ruling that he made on the record, and then we have the written order that was entered. But the written order that was entered, does it ever really say he's modifying, he's granting the motion to modify? Well, I think I don't, to answer that question, does it say I'm granting the motion to modify judgment? No. But if you listen, if you read his ruling, he talks about what he thought Judge Levy was trying to do, and he modifies it to make that happen. And, of course, our standard is not a second opinion, but our standard on review is was he abusing his discretion in doing that? And I think if you look at the O'Malley case, they had the further problem that the post-trial motion was not timely filed, so they had to go through some gymnastics. But fundamentally, this is a case where Mr. Jones was doing everything he could to prevent Ann from getting some money. Judge Mangarelli recognized that. He found him in contempt on a number of issues, and then he says to make, effectuate what I think Judge Levy ruled, here's what I'm going to do on the equity in the House. Isn't that what Mr. Blood is arguing, is that you can't take a contempt finding and resolve the contempt by awarding money? First of all, do you agree with the proposition that you can't award money for the finding of contempt? After the fact, yeah, you can't award damages. Damages. I would agree with that. But you have to remember one thing. The contempt was his failure to pay the mortgage on the temporary order. So, I mean, it was well established that he had not done that. After the fact that she had filed the motion to modify the judgment, I think I'd be in a difficult position. But the fact that there was the motion to modify the judgment gave Judge Mangarelli full authority, which he did to modify what Judge Levy's ruling was on paper to effectuate what he believed her intent was in terms of awarding Ann a portion of the equity. And if we go back to Justice Barbera's point on the equipment, here's what happens on the equipment. The record is clear that the day that judgment comes out, all the property is at the house jointly occupied. He is ordered out of the house, Ann is to stay in the house, and they're going to sell the house that neither knew at that time was foreclosed. That day or the next day, he moves all the property, the tractor, the backhoes, the other equipment, to either Joe Oros' house, his buddy that lived down the street, or to his father's house where he later moved. He acknowledged that he sold two pieces of equipment, and he got the money for the pieces of equipment. One was a skid loader that they had paid $16,000 for. He sold them, he got the money, and he admitted he didn't give any to Ann. She sold one old diesel tank for $100. He moved the tractor, the skid loaders, the baler, all this equipment. And he admitted on the record that he was using this equipment after the divorce. And at the time we were in front of Judge Megarelli, the tractor, which was a nice piece of equipment, was still at his dad's house where he was then living. So clearly it's the same practice of, if I've got to give any of this money to Ann, I'm going to not do it. And, I mean, the idea that she should have sold it, that the judgment was not specific, that he had to sell it, is nonsense. He's the one that moved the equipment. He moved it to his dad's house, his buddy's house. He sold some of it, he kept the money. He was not planning on doing anything that would benefit Ann. But coming back to this whole notion of, can Judge Megarelli grant the relief? He can. There was contempt on a number of issues. One of the things he did is he lost his job. Well, he also got a new job at Boeing and was being paid as a machinist at Boeing $90,000 plus. There was an order that he was to notify the court if he got a new job and notify Ann. And what Judge Megarelli found was, for a year, he didn't notify anyone, he paid nothing. Again, you can't look at these things in a technical vacuum. This was a man who was doing everything he could to deny his wife anything, his ex-wife, deny her anything that she was awarded in the judgment. And so the issue with regard to contempt is sustainable, clearly, in your mind. Yes. What I'm personally having trouble with is Judge Megarelli's order where he goes count by count through the petition for adjudication of indirect contempt. And he says, on petitioner's petition for adjudication of contempt, counts two and three concerning child support, I find this, and so we're going to do this. He doesn't ever skip to a motion to modify. Then he finds on count four about the farm equipment. So because he's in contempt on the farm equipment, I'm going to award money. And then he does the same thing with attorney's fees. I'm going to award money. But all related to, there's no mention of a motion to modify here. Okay, on the farm equipment, that's not awarding damages. That's, he was ordered to sell the property, he didn't sell the property, he used the property, and then he sold some of it. He's enforcing the judgment. What's the difference? He's giving money. Well, the difference is it's a contempt remedy, that he was supposed to do something. He didn't do it. He still got the equipment. What good is it going to do for him to order him again to sell the equipment and split the money? Rather than doing that, he says, okay, he didn't sell the equipment, you pocketed the money, here's your penalty for not following the court's order, and you keep the rest of the property, which made a lot more sense than ordering him to sell it again because he wasn't going to do it. He hadn't done it before. Well, he can't assess a penalty. It's assessing a remedy for his contempt. So you're saying you can order money as a remedy for contempt? In that context, absolutely, because he was ordered to sell it. He didn't sell some of it. He was ordered to sell it and give Anne half. He didn't sell some of it. He kept using it. He kept it. He sold some of it and kept the money and didn't give her her half. So his remedy would be not to tell him to do it again, but to say, okay, you violated the order, and here's the money that this woman lost. So to purge yourself of contempt, you pay this woman the money, you keep the property. On attorney's fees, in enforcement of any order, he's entitled to award attorney's fees. The only one that's questionable is this idea of the monies that were due to be paid to Anne on the house. And I think, again, I would agree. Had we not had the motion to modify the judgment that was specifically addressed in her testimony and was presented to the court as an exhibit, because you have to remember this trial ran for four days. So that pleading was in a file that was, you know, three feet away. So rather than make the judge dig through it, we marked it as an exhibit. But that was specifically presented. And if you read his oral ruling for the bench, he specifically talks about that. He specifically talks about how he's trying to effectuate what he believed Judge Levy's intent to be. And I think the overwhelming issue here, Mr. Jones was absolutely not credible. You know, he testified that he made everyone aware that the foreclosure had taken place, and Judge Magarelli asked him a question of his own, saying, are you seriously telling us that you told people that? And clearly it was false because his own attorney, after the judgment, is arguing the percentage of the split. So you have a huge credibility problem. You have a man who is doing everything to frustrate the court's order. And I think you have Judge Magarelli taking a very practical approach to make an enforceable order or to effectuate the order that Judge Levy had entered. Any questions? It seems to me like what he ended up doing was with regard to finding him in contempt for not selling the equipment, that he found him in contempt. And then he said, okay, so instead of reordering you to do the same thing and enforcing that, I'm going to modify that earlier order. And now you keep the equipment. Here's what you owe in regard. But there's no record of him specifically saying, I'm modifying the previous order. Well, that, and I think in his, I haven't read his oral ruling, but I think in the oral ruling as well, he talks about, you know, you were ordered to do this. You didn't do it. You were ordered to split the money. You didn't do it. Rather than tell you to do it again when you're not going to do it, here's how I'm going to make it work. You're going to pay this money to purge yourself of contempt, and you're going to keep the equipment, which is, I think, a very reasonable, rational, and practical, pragmatic approach. Thank you very much. Thank you, Your Honor. I was hoping you'd talk a little longer before I pull some more things together that I can show you. Too bad. You know, I just, the argument I just heard was that Judge Mongarelli had the authority to modify the judgment. Well, we're talking about a jurisdiction here. And, again, there was a motion to modify pending forever and ever and ever, and there hadn't been a rule about it. So, theoretically, that's true. But I challenge you to find one place in this record that shows that Judge Mongarelli ruled on a motion to modify, or anything besides contempt. And if you look at C580, that's Ant's position statement going into this hearing in front of Judge Mongarelli, which lists the four items that she considers to be, the four beliefs she considers to be abnegation. Page C580. And none of those is the motion to modify. The only one that's filed by her, on her behalf, is her petition for contempt. Because it's very dangerous. I just heard two sentences that put together what were stated in the record, that there's this property over at Joe's house, the neighbor Joe's house, and there's this property over at Franco, where my clients live, and he's using the stuff. Well, the railroad track stopped the train right there because there's nothing about him using the stuff over at Joe's house. There's a backhoe over there. I mean, there's a bobcat and a dude truck. And something else. Like I said, I was looking for that, but here I am. And the point is, no indication that he's using that stuff. Nobody said he was. Actually, Joe said that stuff hadn't been started in six years. So it overstates the record to say he was using that stuff. He was using them over at his house. He said, well, okay. We've got to admit that. Yes, David got his job at Boeing eventually. When he got the job at Boeing, the mortgage was foreclosed on him. First the foreclosure, then the new job at Boeing. Unemployment in the middle. I agree. Just think about it. Why don't you just judge things as they are? I'm happy. But the important thing here, like I said, is why didn't Angie do something about it? I mean, she's—Barry Jantz already said, look, this mortgage is foreclosed. Judge Levy has said, well, I'm modifying the judgment. But she hasn't mentioned that. She's obviously continuing the 60-40 split. Isn't this the time when the litigant says, well, wait a minute, Your Honor, what about the foreclosure? And if that doesn't work, isn't that when you file your notice of appeal and get on down to Mount Vernon? I mean, we don't have to speculate with Judge Levy. We know what Angie—we know what her side is. We know that. And isn't that where the clock stops? They let that—they let that—they let that sit for six years. And here we are when the exhibits—by the way, the original exhibits are long gone from the face of the earth. I mean, there's exhibits mentioned throughout the trial record that are just gone. All we've got since 2016 is that it's not. But why? Well, because we're appealing the original judgment six years late. Well, according to you all, it's still not final. Because the motion to modify has not been heard. Well, but we're here on interlocutory out of contempt. Right. That's what I'm saying. But we're here on interlocutory, so according to your argument, the judgment is still not final. Because the motion to modify has never been heard. It's a post-trial motion. Right? Well, that's— I mean, theoretically. Exactly. That's a good word for it. Theoretically, it's still— I mean, you've said they've abandoned it, but from a technical point of view, if it hasn't been ruled on, then the judgment from 2010 isn't even final. But either party can set a motion. Yes. You can always have your pleadings set for hearing. And what happens if you don't? If you don't, you have to consider putting it before the questions of the court. But if you don't, you're abandoned. That's not been argued, I don't think, before the court. So I don't think we can consider that. I don't think you raised that with me. You may have, and I may have missed it. I grant you that, but I didn't see it. Sirius, Your Honor, I'm most interested in this court knowing the facts. I'm sure that this court will— But abandonment of the motion to modify was not raised, correct? I'm—no, I have not written that. Okay. But I'm sure if this court knows the facts, the just judgment will be right. That is true. Do you have anything else? No. No, that is all of my points on regard. Yes, sir. Thank you so much. Thank you. All right. This matter will be taken under advisement, and we'll get an order out to you in due course.